THE STATE OF OHIO, APPELLEE, *v.*
HENSON, APPELLANT.

(Nos. 49628 and 49629 — Decided November 4, 1985.)

*John T. Corrigan,* prosecuting attorney, and *Chris Johnson,* for appellee.
*John S. Pyle,* for appellant.

PRYATEL, J. On August 14, 1984, Kent L. Henson, defendant-appellant, a registered pharmacist, was indicted in case No. CR-193109 on three counts of unlawfully selling certain controlled substances.[1] On November 13, 1984, defendant was indicted in case No. CR-194634 for knowingly obtaining, possessing or using less than the bulk amount of Dexamyl, a Schedule II drug.

After retracting pleas of not guilty, defendant entered a plea of guilty on count two (as amended — unlawfully

---

[1]Defendant was indicted for selling less than the bulk amount of Tylenol with Codeine No. 3; an amount of Preludin equal to or ex- ceeding the bulk amount but less than three times the bulk amount; and an amount less than the minimum bulk amount of Valium.

possessing Preludin, a Schedule II drug, in an amount greater than the bulk amount but less than three times the bulk amount) in case No. CR-193109, and possessing the bulk amount of Dexamyl, in case No. CR-194634. The trial court entered a *nolle prosequi* on the first and third counts in case No. CR-193109, and amended count two to a possession of Preludin, rather than selling or offering to sell Preludin.

As part of the plea agreement, defendant was further ordered to (1) surrender his pharmacist's license to the court; (2) transfer the terminal license to his pharmacy to a subsequent purchaser; and (3) pay the Cleveland Police Department $256 as reimbursement for the purchase of the drugs and to cover the police department's cost of investigation.

Prior to accepting defendant's plea, the trial court informed the defendant that by pleading guilty he waived certain constitutional rights: trial by jury, cross-examination of witnesses, and the right to have an attorney present throughout the proceedings. The trial court also told defendant that by pleading guilty in case No. CR-193109 (possession of Preludin), he *would* be incarcerated to a mandatory term of not less than eighteen months and could be fined up to $5,000. As to case No. CR-194634 (possession of Dexamyl), defendant was told that he *could* be incarcerated for six months, one year, or one and one-half years and/or fined up to $2,500. Both sentences could be imposed consecutively. The trial court asked defendant whether the pleas he entered were voluntary and made with the understanding of what the maximum penalties were. Defendant answered affirmatively. The trial court made no mention of the possibility that defendant could be required to pay the cost of his incarceration.

The trial court accepted defendant's guilty pleas and ordered that an "abbreviated" presentence report be prepared. Defense counsel filed supplemental presentence information which consisted of letters concerning defendant's character and background. Defendant had no prior criminal record.

Defendant was sentenced as follows: In case No. CR-193109, defendant was ordered to serve an eighteen-month term in the Chillicothe Correctional Institute and was fined $5,000 and costs. Defendant was further ordered to *"pay all costs of his incarceration* the court having satisfied itself of his ability to do so." (Emphasis added.)

In case No. CR-194634, defendant was sentenced to a one-year definite term in the Chillicothe Correctional Institute (consecutive to the sentence ordered in case No. CR-193109) and was fined $2,500 and costs. *The execution of this sentence was suspended.* Defendant was placed on five years' probation *on the condition that defendant pay all fines and costs of incarceration.*

Defendant filed the instant appeal, assigning three errors.

Assignment of Error No. I

"I. The trial court erroneously sentenced the appellant to pay the costs of his incarceration in case number CR-193109 and erroneously established the payment of costs of incarceration as a condition of probation in case number CR-194634."

The threshold issue presented is whether the trial court erred in ordering defendant to pay the costs of his incarceration in a state correctional institution in case No. CR-193109 and in ordering the payment of costs of incarceration as a condition for probation in case No. CR-194634.

Appellee contends that Am. Sub. H. B. No. 363 (eff. September 26, 1984), as codified in R.C. 307.93, 341.14, 341.19, 341.23, 753.02, 753.04, 753.16, 2301.56, 2929.15 and 2947.19, "provides a framework which parallels the trial court's actions."

These sections establish a procedure

whereby "judges and *local* authorities in charge of [county and municipal] jails, workhouses, and correctional centers may require inmates to contribute toward the cost of confinement to the extent of their financial ability * * *" in order to reimburse the county or municipality for the expenses incurred by reason of the inmates' confinement, including, but not limited to, the expenses relating to the provision of food, clothing and shelter. (See 140 Ohio Laws, Part II, 3523, preamble and common language in the statutes.)

These sections do not parallel the trial court's actions: They apply only to *county* and *municipal* correctional facilities and not to *state* institutions. Since these sections are limited in their scope to county and municipal correctional facilities (as conceded by appellee), their application cannot be extended to state institutions. Moreover, the sections which comprise Am. Sub. H. B. No. 363 establish a specific procedure for reimbursement by prisoners in county and municipal facilities: after a person is convicted of an offense other than a minor misdemeanor, the board of county commissioners or the legislative authority of the municipality may require that person to pay for his costs of incarceration in a county or municipal facility. To implement this procedure, the prosecuting attorney (upon the authorization of the board of county commissioners) or other appropriate officer institutes a civil action for reimbursement. Then, under R.C. 2929.15 the judge must hold a hearing to determine whether the convict has the ability to pay the cost of his incarceration. Thus, the framework calls for a separate civil proceeding rather than making the determination part of the criminal sentencing scheme, as the court did here. Accordingly, Am. Sub. H. B. No. 363, as codified in the aforementioned sections, cannot be used to justify the trial court's actions.

Nor does R.C. 2929.11, which sets forth the range of lawful sentences (including the term of sentences and/or the imposition of fines when appropriate in felony cases), contain any provision for a defendant sentenced to a state institution to pay for the cost of his incarceration.

Accordingly, we vacate that portion of the sentence in case No. CR-193109 which levies the costs of incarceration on appellant.

Insofar as the court's determination in case No. CR-194634, that appellant pay the costs of incarceration as a condition of probation, appellee maintains that such order is within the court's power and is reasonable.

We disagree. In this case, the execution of appellant's sentence as to case No. CR-194634 (a one-year definite term and a fine of $2,500 and costs) was *suspended.*[2] The journal entry reflects that appellant was placed on five years' probation on the condition that he pay all fines and the costs of incarceration. However, the suspension of the sentence other than the fine results in no incarceration. Since appellant would have no costs of incarceration to bear, it is clear that the trial court erred in making the costs of incarceration a condition of probation.[3]

---

[2] The journal entry in case No. CR-194634 states:

"It is therefore, ordered and adjudged by the court that said defendant, Kent L. Henson, be imprisoned and confined in the Chillicothe Correctional Institute, Chillicothe, Ohio for a term of one (1) year definite sentence consecutive to [No.] CR-193109 and fined $2,500.00 and costs.

*"Execution of sentence is suspended.* Defendant palced [*sic*] on five (5) years['] probation on condition payment of all fine[s] and costs of incarceration." (Emphasis added.)

[3] Even if the court was referring back to case No. CR-193109, the language regarding the costs of incarceration would still have to be vacated.

In the absence of any authority to support the trial court's actions, we vacate those portions of the sentences in case Nos. CR-193109 and CR-194634 which ordered appellant to bear the cost of his incarceration.

Appellant's first assignment of error is sustained.

### Assignments of Error
### Nos. II and III

"II. The trial court erroneously imposed a fine in case number CR-194634.

"III. The trial court erroneously imposed a fine in addition to a prison sentence in case number CR-193109."

These assignments of error will be treated together since they concern the single issue of whether the trial court abused its discretion in imposing fines in both cases.

R.C. 2929.14 sets forth the criteria a trial court must consider before imposing fines in felony cases. It provides, in pertinent part:

"(A)  In determining whether to impose a fine for a felony and the amount and method of payment of a fine, the court shall consider the nature and circumstances of the offense, the victim impact statement prepared pursuant to section 2947.051 of the Revised Code, the history, character, and condition of the offender, and the ability and resources of the offender and the nature of the burden that payment of a fine will impose on him.

"(B)  The court shall not impose a fine in addition to imprisonment for felony, unless a fine is specially adapted to deterrence of the offense or the correction of the offender, or the offense was committed with purpose to establish, maintain, or facilitate an activity of a criminal syndicate, as defined in section 2923.04 of the Revised Code, or the offense was committed for hire or for purpose of gain."

In pleading guilty to unlawful possession of Dexamyl (case No. CR-194634), appellant admitted to concealing a bottle of illegal, outdated Dexamyl pills on a shelf in the men's bathroom in the medical building in which his pharmacy was located. At the time of sentencing appellant offered the following explanation for his conduct:

"THE  DEFENDANT:  Another pharmacist had a brain tumor and had purchased it [the bottle of Dexamyl]. He hid a bottle up on top of the shelf.

"In cleaning the store out, I came across the bottle in this state.

"I was very upset and overwrought at the time, so I threw it in the rubbish. What if it turns up on my records?

"I didn't recall purchasing it, or when it was purchased.

"I decided I would just hide it up there and if it showed up, I would give it to Cole and show that I did have the medication, and it wasn't for any kind of purpose of —

"THE COURT: You didn't want to leave it on your shelves?

"THE  DEFENDANT:  No, sir. I should have just left it up on the top shelf where I found it."

Appellant's explanation (that he concealed a bottle of Dexamyl tablets because he was afraid that a state investigator would discover the bottle during his inspection) does not excuse his conduct. The act of leaving an illegal, outdated drug in the men's bathroom in the medical building which housed appellant's pharmacy was a deliberate attempt by appellant to conceal his illegal conduct — an act which could have had serious consequences on users of the public facility.

Appellant relies on the case of *Cincinnati* v. *Clardy* (1978), 57 Ohio App. 2d 153 [11 O.O. 3d 137], to support his theory that the court abused its discretion. In *Clardy*, the defendant was tried to a jury on the charges of resisting arrest and assault on a police officer. He was found guilty of the assault charge but not guilty of resisting arrest. The trial court said that it followed the

guidelines set forth in R.C. 2929.22 (concerning the imposition of sentences in misdemeanor cases). The maximum sentence of one hundred eighty days' confinement and a $1,000 fine was imposed. The case was remanded for resentencing on appeal. The court noted:

"As the facts hereinbefore set out show, we have here, within the range of assaults on law enforcement officers covered by the ordinance, a relatively minor breach of the law, committed by a young man in the heat of the moment. The only information before the court was that he was a life-long resident of Cincinnati, had no adult record, was employed at menial labor and was attending night school. The court imposed the maximum sentence permitted by law. Patently it failed to consider and follow the mandates of R.C. 2929.22." *Id.* at 157.

The instant case is distinguishable from *Clardy*. Although appellant had no prior record and was given favorable character references, this case does not involve a "relatively minor breach of the law" or a brawl with a policeman by an impetuous young man. Instead, it concerns a serious drug offense committed by a pharmacist well aware of the necessity for strict compliance with drug laws. Moreover, the trial court in the case at bar did not impose the maximum sentence, as was the case in *Clardy*.

We cannot say that the trial court failed to follow the guidelines set forth in R.C. 2929.14. Nor can we say that the levying of a fine was inappropriate particularly since (1) we have vacated the payment of the costs of incarceration, and (2) the court suspended appellant's sentence (except for the cost of in-carceration, fines and costs). To accept appellant's position and negate the fine imposed would require appellant to pay court costs only. In light of the nature and circumstances of the offense and appellant's ability and resources to pay the fine, we conclude that the court was warranted in imposing a fine of $2,500 in case No. CR-194634.

As to case No. CR-193109 (involving possession of Preludin), appellant was sentenced to eighteen months' imprisonment and fined $5,000. Appellant contends that under R.C. 2929.14(B) the fine was neither "specially adapted to deterrence of the offense or the correction of the offender, * * * [nor was] the offense * * * committed * * * for purpose of gain."

According to appellant, the deterrence of other pharmacists from possessing controlled substances will be much greater if they are threatened with the potential loss of their professional licenses rather than be penalized monetarily. This is not necessarily true: While persons dealing in drugs have the potential to earn large sums of money, the imposition of fines serves as a deterrent. Moreover, pharmacists constitute a basic class of persons who deal with drugs and whose defiance of the law opens the door to abuse by the public — particularly the youth. More than one penalty often needs to be imposed to deter potential offenders. We find that the levying of a fine does have a deterrent effect on persons charged with illegal possession of drugs. The trial court acted within the statutory framework in imposing a fine in addition to imprisonment in case No. CR-193109.[4]

---

[4]Appellant's argument that the offense was not committed for the purpose of gain is immaterial in light of our determination that the fine serves as a deterrent of the offense. Nevertheless, contrary to appellant's assertion, there is no evidence in the record to show that appellant's motivation in committing the crime stemmed from his desire to "go for an evening boat ride" with the undercover policewoman rather than for purpose of gain.

Appellant's second and third assignments of error are overruled.

The sentences are vacated in part (only as they apply to the cost of incarceration) and affirmed in part, and the judgment of the trial court, as so modified, is affirmed.

*Judgment accordingly.*

MARKUS, P.J. and KRUPANSKY, J., concur.